PILLSBURY WINTHROP SHAW PITTMAN LLP
MARK E. ELLIOTT #157759
mark.elliott@pillsburylaw.com
JULIA E. STEIN #269518
julia.stein@pillsburylaw.com
725 South Figueroa Street, Suite 2800
Los Angeles, CA  90017-5406
Telephone: (213) 488-7100
Facsimile No.: (213) 629-1033

Attorneys for Defendants
SANDRA LYON, ET AL.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| AMERICA UNITES FOR KIDS, et al., | Case No. 2:15-CV-02124 |
| Plaintiffs, | DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |
| vs. | |
| SANDRA LYON, et al., | |
| Defendants. | Dept.    15 |
| | Judge:   Anderson |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................. 1

II.   STATEMENT OF FACTS.................................................... 4

III.  PLAINTIFFS CANNOT BE GRANTED RELIEF THAT IS OUTSIDE THE SCOPE OF PERMISSIBLE INJUNCTIVE RELIEF UNDER TSCA .......................................................... 7

IV.  PLAINTIFFS CANNOT MEET THEIR BURDEN TO ESTABLISH THAT A PRELIMINARY INJUNCTION SHOULD BE GRANTED.................................................... 8

    A.   Plaintiffs Cannot Establish a Likelihood of Success on the Merits ................................................................... 9

        1.   EPA has Primary Jurisdiction over PCB Removal........... 10

        2.   Plaintiffs' Claims are Moot because the Remedies Sought are Already Mandated by EPA............................. 13

        3.   The Court Lacks Jurisdiction to Hear Plaintiffs' Claims because Plaintiffs Did Not Properly Notice Their Claims under 40 C.F.R. § 702.................................. 14

    B.   Plaintiffs Cannot Demonstrate They Will Suffer Irreparable Harm if the Court Does Not Grant the Preliminary Injunction ................................................................... 16

    C.   The Equities Weigh Against Issuing a Preliminary Injunction ................................................................... 20

    D.   The Public Interest Does Not Support Issuance of a Preliminary Injunction ................................................. 22

V.   CONCLUSION ................................................................. 23

<u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>Cases</u>

*Anderson v. United States,*
    612 F.2d 1112 (9th Cir. 1979)............................................................ 9, 16

*Auer v. Robbins,*
    519 U.S. 452 (1997) ...................................................................... 8, 22

*Barton v. District of Columbia,*
    131 F. Supp. 2d 236 (D.D.C. 2001) .......................................................10

*Boyes v. Shell Oil Products Co.,*
    199 F.3d 1260 (11th Cir. 2000)............................................................10

*Caribbean Marine Service Co. v. Baldridge,*
    844 F.2d 668 (9th Cir. 1988)...............................................................19

*Chalk v. United States Dist. Court Cent. Dist of Cal.,*
    840 F.2d 701 (9th Cir. 1988)...............................................................20

*Chemical Weapons Working Group Inc. v. U.S. Dept. of Army,*
    935 F. Supp. 1206 (D. Utah 1996) ........................................................19

*Chesapeake Bay Foundation, Inc. v. Severstal Sparrows Point,*
    *LLC,*
    794 F. Supp. 2d 602 (D. Md. 2011) .......................................................15

*City of Fresno v. United States,*
    709 F. Supp. 2d 888 (E.D. Cal. 2010)....................................................14

*Davis Bros. Inc. v. Thornton Oil Co.,*
    12 F. Supp. 2d 1333 (M.D. Ga. 1998)....................................................14

*Del. River Port Auth. v. Transam. Trailer Transp.,*
    501 F.2d 917 (3d Cir. 1974)...............................................................22

*Farley Transp. Co. v. Santa Fe Trail Transp. Co.,*
    778 F.2d 1365 (9th Cir. 1985)............................................................10

*Feldman v. Bomar,*
    518 F.3d 637 (9th Cir. 2008)..............................................................13

*Friends of Santa Fe County v. LAC Minerals, Inc.*,
   892 F. Supp. 1333 (D.N.M. 1995) ........................................................12

*Haynes v. Navy Fed. Credit Union*,
   841 F. Supp. 2d 221 (D.D.C. 2012) ................................................ 9, 10

*Mair v. City of Albany*,
   303 F. Supp. 2d 237 (N.D.N.Y. 2004) ....................................................7

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
   571 F.3d 873 (9th Cir. 2009).................................................................9

*Martinez v. Mathews*,
   544 F.2d 1233 (5th Cir. 1976).............................................................9

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) ..........................................................................9

*Mississippi Power & Light Co. v. United Gas Pipe Line Co.*,
   532 F.2d 412 (5th Cir. 1976)...............................................................12

*N.M. Env't Dep't v. Foulston (In re L.F. Jennings Oil Co.)*,
   4 F.3d 887 (10th Cir. 1993).................................................................13

*New York Communities for Change v. New York Dept. of Educ.*,
   2012 WL 7807955 (E.D.N.Y. Aug. 29, 2012)............................... 15, 16

*New York Communities for Change v. New York City Dept. of Educ.*,
   2013 WL 1232244 (E.D.N.Y. Mar. 26, 2013)………………………12

*Northern California River Watch v. Honeywell Aerospace*,
   830 F.Supp. 2d 760 (N.D. Cal. 2011) ...................................................14

*Oil Re-Refining Co., Inc. v. Pacific Recycling, Inc.*,
   75 ERC 1315, 2 (D. Ore. 2012)............................................................7

*Pom Wonderful LLC v. Hubbard*,
   775 F.3d 1118 (9th Cir. 2014)..............................................................9

*Rococo Assocs., Inc. v. Award Packaging Corp.*,
   803 F. Supp. 2d 184 (E.D.N.Y. 2011)...................................................20

*Ruvalcaba v. City of Los Angeles*,
   167 F.3d 514 (9th Cir. 1999)...............................................................13

*Serena v. Mock,*
    547 F.3d 1051 (9th Cir. 2008) ................................................................13

*Southwest Voter Registration Educ. Project v. Shelley,*
    344 F.3d 914 (9th Cir. 2003) ................................................................20

*Stanley v. Univ. of S. California,*
    13 F.3d 1313 (9th Cir. 1994) ................................................................9

*Tri-Realty Co. v. Ursinus Coll.,*
    2013 WL 5298469 (E.D. Pa. Sept. 19, 2013) .......................................22

*United States v. General Dynamics Corp.,*
    828 F.2d 1356 (9th Cir. 1987) ..............................................................11

*Winter v. Natural Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ...................................................................................9

<u>Statutes and Codes</u>

Code of Federal Regulations
    Title 40, section 702.61 ........................................................................14
    Title 40, section 702.61(a) ....................................................................14
    Title 40, section 702.62 ................................................................. 10, 14
    Title 40, section 745.227 .......................................................................22
    Title 40, section 761.61 .........................................................................12
    Title 40, section 761.61(c) ......................................................................8
    Title 40, section 763.93 .........................................................................22

United States Code
    Title 15, section 2619(a) .........................................................................7
    Title 15, section 2601(c) .......................................................................10
    Title 15, section 2605 ...........................................................................10
    Title 15, section 2617 ............................................................................11
    Title 15, section 2685 ...........................................................................22

<u>Rules and Regulations</u>

Federal Rules of Civil Procedure
    Rule 12(b)(1) ........................................................................................14

D'S MEM. OF P&A IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
Case No. 2:15-CV-02124

1

<u>Other Authorities</u>

2

11A C. Wright, A. Miller, & M. Kane,
    Federal Practice and Procedure § 2948, pp. 129–130 (2d
    ed. 1995) ..................................................................................................9

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants Sandra Lyon, Jan Maez, Laurie Lieberman, Dr. Jose Escarce, Craig Foster, Maria Leon-Vazquez, Richard Tahvildaran-Jesswein, Oscar de la Torre, and Ralph Mechur (hereinafter, "Defendants") hereby oppose the Motion for Preliminary Injunction of Plaintiffs America Unites for Kids and Public Employees for Environmental Responsibility (hereinafter, "Plaintiffs").

## I.   INTRODUCTION

Plaintiffs' motion for preliminary injunction is the latest salvo in a case that, at its core, does nothing more than seek publicity by attacking a compliant, regulated entity, the Santa Monica-Malibu Unified School District ("SMMUSD"), for appropriately following the directives of the lead agency with exclusive oversight authority and regulatory jurisdiction under the federal Toxic Substances Control Act ("TSCA").  SMMUSD has spent significant effort complying ***to the letter*** with the instructions of the United States Environmental Protection Agency ("EPA") concerning the investigation and cleanup of polychlorinated biphenyl ("PCB")-containing materials at Juan Cabrillo Elementary School and Malibu Middle and High School (collectively, the "Malibu Campus").  Throughout the process, SMMUSD has followed – and will continue to follow – the instructions and guidance of EPA and its scientists to ensure the health and welfare of staff and students.  In turn, EPA has consistently approved SMMUSD's activities with respect to remediation and management in place of PCB-containing materials at the Malibu Campus, finding that SMMUSD's actions are indeed ensuring that the Malibu Campus is safe.

Plaintiffs' motion for preliminary injunction falsely claims that EPA has not gotten involved in any Malibu Campus cleanup at all, and that this Court is somehow required to step into the breach.  *See* Motion for Preliminary

Injunction, fn. 1.  This is, of course, not true.  SMMUSD has been working under EPA's direct oversight and jurisdiction for over a year in the investigation and remediation of PCB-containing materials at the Malibu Campus.  EPA is the agency with Congressionally-authorized direct jurisdiction over TSCA cleanups, and it is actively exercising its jurisdiction and oversight here in the ongoing investigation and remediation at the Malibu Campus.

Plaintiffs' motion papers hide the true story.  In reality, Plaintiffs do not take literal issue with TSCA's established regulatory PCB remedial requirements, EPA's national policies with respect to PCB cleanup, or EPA's practices and approvals at the Malibu Campus themselves.  This lawsuit is most likely a vehicle to attract publicity to Plaintiffs' policy arguments against TSCA and EPA, which are more appropriately addressed to Congress and EPA themselves.  Importantly, because EPA's decisions taken in this area of its significant expertise must be accorded significant deference by the Court, in the instant action, Plaintiffs never directly challenge the agency's policies and determinations at the Malibu Campus in this lawsuit, nor do they allege that EPA action has violated TSCA or claim that the EPA-approved cleanup has somehow been inconsistent with EPA's established national policies for PCBs in schools.  Defendants, who alone have been singled out in this action, have only done as they must under the law:  comply with the directives of EPA exercised according to its jurisdiction and oversight authority pursuant to TSCA.

Plaintiffs now demand that this Court supplant EPA as the oversight agency with jurisdiction over the TSCA cleanup at the Malibu Campus.  They want this Court to force students and staff out of classrooms already deemed safe by EPA, disrupt SMMUSD's considered balancing of the cleanup needs

1   with the priorities of the ongoing educational mission at the Malibu Campus,

2   and disregard EPA's approved timetable for removal of building materials in

3   favor of their own timetable inconsistent with EPA's approved plan.  If taken,

4   these actions would override EPA's jurisdiction, and completely ignore EPA's

5   established TSCA PCB policies and their Malibu Campus-specific

6   applications.

7        Plaintiffs seek a preliminary injunction to compel Defendants to direct

8   SMMUSD to immediately cease use, "for any educational purpose," of 15

9   classrooms at the Malibu Campus where PCBs have been identified in

10  building materials in excess of the TSCA regulatory threshold of 50 parts per

11  million ("ppm"), and to remove all known materials in those classrooms

12  containing PCBs in excess of 50 ppm prior to July 31, 2015.  But Plaintiffs

13  have never shown, as would be required for such an action, that EPA's

14  interpretations of its regulations through implementation of the policies and

15  directives to which Defendants have adhered are in any way erroneous.  And

16  critically, Plaintiffs cannot meet their burden with regard to any of the

17  elements required to obtain such injunctive relief.

18       Plaintiffs cannot demonstrate a likelihood of success on the merits of

19  their TSCA claim, which this Court lacks jurisdiction to hear due to the

20  doctrine of primary jurisdiction, because it is moot, and because it was

21  improperly noticed.   Nor can Plaintiffs show that they will be irreparably

22  harmed in the absence of injunctive relief when, as discussed below, EPA, the

23  lead agency with statutory jurisdiction over these issues, has determined there

24  are no adverse health risks associated with PCB exposures at the Malibu

25  Campus, and the relief Plaintiffs request is already planned for implementation

26  over the Summer 2015 school break and subsequent school breaks pursuant to

27  an approval by EPA.  Also, the balance of the equities does not favor Plaintiffs

28

D'S MEM. OF P&A IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
Case No. 2:15-CV-02124

1   and there is no public interest in the proposed injunctive relief which, in fact,

2   would serve only to supplant EPA policy applied nationally with respect to

3   PCBs in schools, without any requisite showing that EPA's policies are an

4   erroneous interpretation of its own regulations.  Finally, Plaintiffs' demanded

5   injunctive relief would only disrupt the Malibu Campus and make it more

6   difficult for SMMUSD to balance the cleanup needs with the priorities of

7   students and staff in carrying out the ongoing educational mission at the

8   Malibu Campus.

9        Accordingly, Plaintiffs' request for preliminary injunction should be

10  denied.

11  **II.    STATEMENT OF FACTS**

12       Plaintiffs allege Defendants have violated TSCA because building

13  materials at the Malibu Campus contain PCBs in excess of the TSCA

14  regulatory threshold of 50 ppm.  They base these allegations on samples of

15  bulk materials they claim were collected at various locations at the Malibu

16  Campus.

17       Contrary to Plaintiffs' assertions, SMMUSD itself has tested myriad

18  bulk samples from the Malibu Campus, many taken from the same rooms

19  allegedly tested by Plaintiffs.  April 10, 2015 Supplemental Daugherty

20  Declaration (hereinafter, "Supp. Daugherty Decl."), ¶36.  Defendants do not

21  dispute that, while PCB exposures at the Malibu Campus pose no adverse

22  health risk to either students or staff, some exceedances of TSCA's PCB

23  regulatory threshold have been found.  However, these exceedances are

24  ***already being addressed*** by Defendants pursuant to proper federal EPA

25  oversight and approval under TSCA.  Defendants have been working

26  diligently under the supervision of EPA, the lead regulatory agency with

27  authority under TSCA to plan for and execute removal activities.  On August

28

D'S MEM. OF P&A IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
Case No. 2:15-CV-02124

14, 2014, EPA approved SMMUSD's plans for removal of known and verified building materials with PCB concentrations above 50 ppm.  April 2, 2015 Daugherty Declaration (hereinafter, "First Daugherty Decl."), Exhibit F.  This removal is slated to begin over Summer 2015 so as not to disrupt the school schedule, and to be completed by no later than March 2016 for all currently known and verified locations.  In fact, of the 15 rooms Plaintiffs reference in their motion papers, five will, by direction of EPA, be remediated by June 30, 2015—a full month **before** the July 31, 2015 date Plaintiffs propose.

On October 31, 2014, EPA approved management in place of PCB materials at the Malibu Campus pursuant to EPA-mandated and established best management practices.  EPA found unequivocally, as required by TSCA, that PCB materials remaining in place at the Malibu Campus do not pose an unreasonable risk of injury, either to human health or to the environment.  Supp. Daugherty Decl., ¶8.  EPA has also validated SMMUSD's decision to continue to safely hold classes at the Malibu Campus, finding that "air and dust sampling results serve as the basis for appropriate decisions by the District…including allowing staff and students access to those classrooms that have been shown to meet EPA's health-based guidelines."  First Daugherty Decl., Exhibit F.  Representatives from EPA have even gone so far as to tell the Malibu public they would be comfortable sending their own children to school at the Malibu Campus.  Supp. Daugherty Decl., ¶7.  As part of its approvals, EPA expressly approved SMMUSD's plan to address any PCB exceedances that are discovered at the Malibu Campus in the future.  *Id*. at ¶3.

SMMUSD is bound by the August and October 2014 EPA approvals.  Any changes or departures from those approvals may not be made without the express written consent of EPA.  Per the October 2014 approval, "[d]eparture from this approval without prior written permission from EPA may result in

1 revocation of this approval."  First Daugherty Decl., Exhibit C.  If SMMUSD

2 were forced to obtain approval from EPA for changes to the scope and

3 timeframes of the current EPA-approved remediation at the Malibu Campus,

4 remediation likely would be delayed past the time it is scheduled to occur over

5 the school break.  Supp. Daugherty Decl., ¶11.

6      Despite this ongoing implementation of the EPA-approved TSCA

7 cleanup plan for PCBs at the Malibu Campus, on March 23, 2015, Plaintiffs

8 filed their Complaint, alleging TSCA violations based on claimed exceedances

9 of the 50 ppm TSCA regulatory threshold at several locations on the Malibu

10 Campus.  First Amended Complaint, ¶¶ 2, 126.  On April 1, 2015, Plaintiffs

11 filed their Motion for Preliminary Injunction, demanding that Defendants be

12 compelled to cordon off and remediate 15 classrooms with allegedly known

13 and verified locations of PCBs in excess of 50 ppm on the school campuses.

14 Plaintiffs' Motion for Preliminary Injunction,  2.  Plaintiff's motion ignores the

15 fact that PCB exposures at the Malibu Campus pose no adverse human health

16 risk, and that Defendants *are already preparing to execute an EPA-approved*

17 *and -supervised plan to remove known and verified PCBs exceeding the 50*

18 *ppm TSCA regulatory threshold*.  As stated above, the EPA-approved

19 removal from many of the classrooms will take place *before* the date requested

20 by Plaintiffs.

21      Plaintiffs' unnecessary, duplicative and burdensome request for

22 preliminary injunctive relief is not needed to keep students and staff at the

23 Malibu Campus safe and will not make them any safer.  Ample testing,

24 required and approved by EPA, has already documented that PCB exposures

25 are safely below EPA health levels.  Plaintiffs' request is nothing more than an

26 attempt to get this Court to overturn the directives and policy of EPA, the lead

27 agency already exercising its authority over PCB remediation under TSCA at

28

1   both the Malibu Campus and schools across the country.  Plaintiffs have not

2   alleged that EPA is failing to discharge its legal duty under TSCA.  As such,

3   this Court should defer to EPA's legal execution of its directives and policy

4   under TSCA.  Plaintiffs' request should be denied.

5   **III.    PLAINTIFFS CANNOT BE GRANTED RELIEF THAT IS**

6          **OUTSIDE THE SCOPE OF PERMISSIBLE INJUNCTIVE**

7          **RELIEF UNDER TSCA**

8          As a preliminary matter, Plaintiffs are not eligible for the injunctive

9   relief they seek.   First and foremost, under TSCA, Plaintiffs can only request

10  that exceedances be remediated, not that classrooms be vacated.  TSCA only

11  allows for injunctive relief to halt ongoing or future TSCA violations.  *See* 15

12  U.S.C. § 2619(a); *Mair v. City of Albany*, 303 F. Supp. 2d 237, 243 (N.D.N.Y.

13  2004); *Oil Re-Refining Co., Inc. v. Pacific Recycling, Inc.*, 75 ERC 1315, 2 (D.

14  Ore. 2012).  It does not allow for the injunctive relief Plaintiffs request:

15  immediate evacuation of classrooms at the school which, in any case, are safe

16  for students and teachers to occupy.  Indeed, Plaintiffs do not even request this

17  relief as a remedy in their First Amended Complaint.  *See* First Amended

18  Complaint at 32.  And here, even the TSCA relief Plaintiffs do request—

19  abatement of exceedances of the TSCA threshold—is unnecessary because

20  exceedances are ***already*** being addressed pursuant to an EPA-approved plan

21  according to which school buildings can be safely used in the interim.

22         Plaintiffs also are ineligible for injunctive relief that, in essence, asks

23  this Court to override EPA's policy interpretations of its own TSCA

24  regulations, as manifested both in EPA's national "PCBs in Schools" policy

25  and EPA's actions at the Malibu Campus specifically.  EPA's policies and

26  interpretations established in the area of its particular expertise are accorded

27  significant judicial deference, and Plaintiffs have not even directly challenged

28

D'S MEM. OF P&A IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
Case No. 2:15-CV-02124

1   them, let alone made the required showing that EPA's interpretation of its

2   regulations is erroneous.  *See Auer v. Robbins*, 519 U.S. 452, 461 (1997) (an

3   agency's interpretation of its own regulations through policy is accorded

4   deference unless its interpretation is "plainly erroneous").

5        EPA has stated in no uncertain terms that "[a]n approval under TSCA

6   regulations in 40 C.F.R. 761.61(c) requires EPA to make a finding that PCB

7   remediation wastes remaining in place at the two schools will not pose an

8   unreasonable risk of injury to health or the environment.  EPA is hereby

9   making a finding that the District meets this TSCA standard for Malibu High

10  School and Juan Cabrillo Elementary School."  Supp. Daugherty Decl., ¶8.

11  Requiring SMMUSD to vacate classrooms that have been deemed safe by

12  EPA while school is still in session is not only incredibly burdensome to

13  Defendants and disruptive to students and school staff, but would also directly

14  contradict EPA's TSCA finding that the classrooms may be occupied and

15  PCB-containing materials may be safely managed in place until their

16  mandated removal.  *Id*. at ¶¶8, 17, 30, 31, 44, 53.

17       Appropriate deference should be accorded to EPA's policies, approvals,

18  and instructions issued within its expertise and exclusive jurisdiction to direct

19  and oversee TSCA cleanups.  In fact, Plaintiffs do not challenge EPA's actions

20  or policies in this action ***at all***.  This Court cannot take an action that would

21  have the effect of overturning national EPA policy with respect to PCBs in

22  schools when no challenge to that policy has even been mounted.

23  **IV.   PLAINTIFFS CANNOT MEET THEIR BURDEN TO**

24  **ESTABLISH THAT A PRELIMINARY INJUNCTION SHOULD**

25  **BE GRANTED**

26       Furthermore, Plaintiffs cannot establish, as required by law, that (1)

27  they are likely to succeed on the merits; (2) they are likely to suffer irreparable

28

harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction would be in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014). "[A] preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant, ***by a clear showing***, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citing 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129–130 (2d ed. 1995)) (emphasis in original).

Plaintiffs request a mandatory injunction to remove PCB-containing materials at the Malibu Campus, a request that "'goes well beyond simply maintaining the status quo *pendente lite* [and] is particularly disfavored.'" *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1320 (9th Cir. 1994) (citing *Anderson v. United States,* 612 F.2d 1112, 1114 (9th Cir. 1979)). "In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases.'" *Marlyn Nutraceuticals v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (quoting *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)).

This Court should deny Plaintiffs' request for mandatory injunction because the facts and law ***do not*** "'clearly favor the moving party.'" *Stanley*, 13 F.3d at 1320 (quoting *Martinez*, 544 F.2d at 1243).

### A.   <u>Plaintiffs Cannot Establish a Likelihood of Success on the Merits</u>.

"'It is particularly important for the [movant] to demonstrate a substantial likelihood of success on the merits.' If the movant fails to do so, inquiry into the remaining factors is unnecessary, for the injunctive relief must be denied on that ground alone." *Haynes v. Navy Fed. Credit Union*, 841 F.

1    Supp. 2d 221, 223 (D.D.C. 2012) (quoting *Barton v. District of Columbia*, 131
2    F. Supp. 2d 236, 242 (D.D.C. 2001)).  Plaintiffs cannot establish a likelihood
3    of success on the merits for three reasons.  First, EPA has primary jurisdiction
4    over PCB removal actions at the Malibu Campus and this Court should decline
5    to substitute its judgment for that of EPA in the area of its special competence.
6    Second, the controversy is moot because SMMUSD has already taken action,
7    under EPA direction and oversight, to cure all TSCA violations at the Malibu
8    Campus and EPA's approval mandates that such violations will not occur in
9    the future.  Third, this Court lacks jurisdiction to hear Plaintiffs' claims
10   because Plaintiffs failed to provide sufficient notice pursuant to TSCA's notice
11   requirements under 40 C.F.R. § 702.62.

12              1.    EPA has Primary Jurisdiction over PCB Removal.

13          This Court should defer to EPA's existing and ongoing exercise of
14   primary jurisdiction under TSCA to oversee and direct the Malibu Campus
15   PCB remediation.  The purpose of the primary jurisdiction doctrine is
16   "protecting the administrative process from judicial interference," and courts
17   defer to the lead regulatory agency when, as here, "the enforcement of a claim
18   subject to a specific regulatory scheme requires resolution of issues that are
19   'within the special competence of an administrative body.'"  *Boyes v. Shell Oil*
20   *Products Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000) (internal citations
21   omitted); *see also Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 778 F.2d
22   1365, 1370 (9th Cir. 1985).  EPA has primary jurisdiction here because
23   TSCA—a regulatory scheme requiring uniform administration—places ***sole***
24   authority to compel remediation of PCB wastes in EPA's hands.  *See* 15
25   U.S.C. § 2601(c) (giving EPA sole regulatory authority under TSCA); 15
26   U.S.C. § 2605 (defining EPA's sole authority to promulgate regulations
27   governing the "manufacturing, processing, distribution in commerce or use" of
28

1   chemical substances, including PCBs); 15 U.S.C. § 2617 (preemption

2   provision establishing primacy of EPA regulations designed "to protect

3   against a risk of injury to health or the environment" from regulated chemicals

4   like PCBs); *see also United States v. General Dynamics Corp.*, 828 F.2d 1356,

5   1362 (9th Cir. 1987) (an agency has primary jurisdiction if authority over the

6   issue in question has been given pursuant to a regulation that "subjects an

7   industry or activity to a comprehensive regulatory scheme that requires

8   expertise or uniformity in administration").

9        EPA, the lead agency with authority to require remediation of PCBs

10  under TSCA, has already approved a remediation plan for the Malibu Campus

11  that not only addresses identified PCB contamination but provides for

12  mandatory best management practices that will eliminate the potential for

13  future TSCA violations.  Supp. Daugherty Decl., ¶3.  EPA's expertise in this

14  area is clear.  EPA oversees PCB remediation in schools across the nation and

15  has adopted a "PCBs in Schools" policy that sets uniform health levels for

16  PCB exposures to children and others in school buildings.  *Id.* at ¶16.   These

17  policies and practices have not only been utilized by EPA in schools

18  nationally, but are emulated in the policy documents of other governmental

19  agencies as well.  For example, the State of Washington's Department of

20  Ecology (subject to deference to EPA in areas of exclusive jurisdiction, such

21  as removal/abatement of TSCA violations) recently released a plan for PCB

22  management in schools consistent with EPA's management in place policies.

23  *Id.* at ¶32.   SMMUSD has consistently acted at EPA's direction and has

24  secured EPA's approval in two letters issued in August 2014 and October

25  2014 for plans to remove specific known and verified locations of PCBs above

26  50 ppm within a set timeframe, and for plans to manage in place PCB

27  materials at the school, which do not pose any adverse health risk.  *Id.* at ¶3.

28

D'S MEM. OF P&A IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
Case No. 2:15-CV-02124

1    Courts decline involvement where, as here, agencies are already

2    engaged in remediation because in such cases, court involvement "would

3    represent a serious drain of judicial resources and would largely duplicate the

4    past and present efforts" of the agency.  *Friends of Santa Fe County v. LAC*

5    *Minerals, Inc.*, 892 F. Supp. 1333, 1350 (D.N.M. 1995).  It is only when

6    agencies shirk involvement that courts step in.  *See, e.g., New York*

7    *Communities for Change v. New York City Dept. of Educ.*, 2013 WL 1232244,

8    *7 (E.D.N.Y. Mar. 26, 2013); *Mississippi Power & Light Co. v. United Gas*

9    *Pipe Line Co.*, 532 F.2d 412, 420 (5th Cir. 1976).  Far from abdicating its

10   authority at the Malibu Campus, EPA has been involved in oversight of

11   SMMUSD's response to the presence of PCB materials at the Malibu Campus

12   for over a year and has "acted with deliberate care and diligence," formally

13   approving a remediation plan that includes stringent and mandatory

14   benchmarks SMMUSD must meet.  *See Friends of Santa Fe County*, 892

15   F.Supp. at 1350; Supp. Daugherty Decl., ¶3.  EPA has worked actively and

16   consistently to enforce TSCA at the Malibu Campus.  Again, it is notable that

17   Plaintiffs have ***never*** challenged any of the numerous oversight actions EPA

18   has taken at the Malibu Campus, including EPA's approval of a remediation

19   plan for known and verified exceedances of the 50 ppm TSCA threshold for

20   PCBs.   SMMUSD is acting precisely according to EPA's directives, exercised

21   under EPA's exclusive PCB remediation authority, and Plaintiffs overlook the

22   fact that even if the relief they request were granted, EPA would need to

23   approve that removal process under TSCA, duplicating the preexisting efforts

24   of the agency.  Supp. Daugherty Decl., ¶11; 40 C.F.R. § 761.61.

25   Plaintiffs' lawsuit puts the Court in the unwanted position of potentially

26   issuing an order that conflicts with EPA's decisions in directing and

27   overseeing the remediation of the Malibu Campus.  This is a particular

28

1    problem because Plaintiffs seek not only to require removal of certain PCB-

2    containing materials, but also to compel the immediate cordoning off of

3    classrooms that EPA has already determined, pursuant to TSCA, are safe.

4    This would disregard EPA's role as the statutory oversight agency for the

5    TSCA remediation at the Campus, acting in the area of its special competence,

6    and instead substitute the Court as the supervising entity, a role in which the

7    Court would be asked to require ***the same types of cleanup activities EPA is***

8    ***already requiring and overseeing***.

9                    2.    Plaintiffs' Claims are Moot because the Remedies Sought

10                         are Already Mandated by EPA.

11          Federal courts lack jurisdiction to consider a moot claim.  "If there is no

12   longer a possibility that [a party] can obtain relief for his claim, that claim is

13   moot and must be dismissed for lack of jurisdiction." *Ruvalcaba v. City of Los*

14   *Angeles*, 167 F.3d 514, 521 (9th Cir. 1999).  Here, there is no "present

15   controversy as to which effective relief can be granted." *Serena v. Mock*, 547

16   F.3d 1051, 1053 (9th Cir. 2008) (*quoting Feldman v. Bomar*, 518 F.3d 637,

17   642 (9th Cir. 2008)).  Because the injunctive relief sought by the Plaintiffs—

18   *i.e.*, evacuation of 15 classrooms and immediate removal and disposal of

19   materials in those classrooms known and verified to contain PCBs in excess of

20   regulatory threshold of 50 ppm—is not necessary in light of the ongoing EPA-

21   supervised TSCA remediation, "the relief sought can no longer be given or is

22   no longer needed" and the case is moot.  *N.M. Env't Dep't v. Foulston (In re*

23   *L.F. Jennings Oil Co.)*, 4 F.3d 887, 889 (10th Cir. 1993).

24          When remedial efforts are ongoing, a controversy related to that

25   remediation is moot.  *See, e.g., City of Fresno v. United States*, 709 F. Supp.

26   2d 888 (E.D. Cal. 2010); *Davis Bros. Inc. v. Thornton Oil Co.*, 12 F. Supp. 2d

27   1333, 1338 (M.D. Ga. 1998).  SMMUSD is already acting in accordance with

28

D'S MEM. OF P&A IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
Case No. 2:15-CV-02124

an approved and mandatory EPA plan to remove and dispose of known and
verified building materials containing PCBs in excess of 50 ppm.  Supp.
Daugherty Decl., ¶4.  Four such locations were identified during 2014
sampling events, and those classrooms will be remediated, pursuant to EPA's
approval, no later than June 30, 2015—*a full month before the date requested
by Plaintiffs*.  *Id*.  In addition, consistent with EPA's binding approval,
SMMUSD has committed to removing all other currently known and verified
exceedances of the TSCA threshold for PCBs in building materials by March
2016.  *Id*.  Any removal at those locations that cannot be accomplished during
the summer 2015 school break will occur during subsequent school breaks,
when students and staff are not in classrooms.  EPA's October 2014 TSCA
approval guarantees that the Malibu Campus remains safe for students and
staff until that removal occurs.  *Id*. at ¶8.  Accordingly, the injunctive relief
sought by Plaintiffs is unnecessary.

> 3.  The Court Lacks Jurisdiction to Hear Plaintiffs' Claims
> because Plaintiffs Did Not Properly Notice Their Claims
> under 40 C.F.R. § 702.62.

Additionally, Plaintiffs did not properly notice their claims under 40
C.F.R. §§ 702.61 and 702.62.  Thus, the court lacks jurisdiction to hear them.
*See Northern California River Watch v. Honeywell Aerospace*, 830 F. Supp.
2d 760, 765 (N.D. Cal. 2011); Fed. R. Civ. P. 12(b)(1).

TSCA provides that, prior to filing suit, an alleged violator must be
given 60 days prior notice to remedy alleged violations of the Act.  40 C.F.R.
§ 702.61(a).  In relevant part, this notice "shall include sufficient information
to permit the recipient to identify . . . the location of the alleged violation."  40
C.F.R. § 702.62.  The purpose of this notice requirement is "to afford
government regulators an opportunity to act with respect to the violation and

1   to give the violators an opportunity to comply with the law." *New York*

2   *Communities for Change v. New York Dept. of Educ.*, 2012 WL 7807955, *11

3   (E.D.N.Y. Aug. 29, 2012).  Notice that does not provide a defendant enough

4   information to identify the problem and correct it is insufficient under TSCA.

5   *Id.*  Simply naming a general area where a violation is located is not enough;

6   reasonable specificity must be provided.  *Chesapeake Bay Foundation, Inc. v.*

7   *Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 622 (D. Md. 2011).

8          Plaintiffs have only described the rooms at the Malibu Campus

9   allegedly containing TSCA violations, but not the actual locations within each

10  room alleged to contain actionable PCB levels.  These general, unspecified

11  allegations—based on Plaintiffs' "independent" sampling illegally taken

12  during a trespass of school property and not overseen or authorized by EPA or

13  SMMUSD—make it impossible for SMMUSD to know exactly which areas in

14  each room might require remediation.  Moreover, SMMUSD's extensive

15  sampling and testing data showed no PCB exposures documented by air or

16  wipe samples in many of the same rooms Plaintiffs alleged violations.  Even

17  where SMMUSD could verify, as approved by EPA, that PCBs were present

18  in some building materials in the classrooms, SMMUSD's testing results did

19  not match Plaintiffs' results.  Further, SMMUSD's environmental consultants

20  observed so many potential sampling locations—in the form of missing caulk

21  and other building materials—that it is impossible to tell where Plaintiffs had

22  sampled.  Supp. Daugherty Decl., ¶35.  Plaintiffs' supporting declarations,

23  which extensively discuss the "independent" sampling Plaintiffs conducted,

24  never once explain how samples were collected, detail the precise locations

25  from which samples were taken, or establish any chain of custody for the

26  samples.  *Id.* at ¶34; *see, e.g.*, Rosenfeld Decl., ¶¶22-28; DeNicola Decl.,

27

28

1  ¶¶18-22.  Notably, the declarants also fail to mention that the samples were

2  collected illegally.

3       Defendants requested additional information from Plaintiffs on three

4  separate occasions to attempt to locate alleged TSCA violations and remediate

5  them.  In every case, Plaintiffs have refused to reveal the locations from which

6  they or their unidentified agent allegedly took their unauthorized samples at

7  the Malibu Campus.  Instead of aiding SMMUSD by providing specific

8  information that could have led to additional cleanup at the Malibu Campus

9  while avoiding disruption to students and staff, Plaintiffs decided to file this

10 lawsuit.

11      Despite good faith efforts, SMMUSD cannot remediate every alleged

12 violation if Plaintiffs ignore TSCA's notice requirements, undermining the

13 very purpose of TSCA's notice provisions.  *See New York Communities for*

14 *Change*, 2012 WL 7807955.  The Court lacks jurisdiction to consider these

15 improperly noticed claims.

16     **B.**    **Plaintiffs Cannot Demonstrate They Will Suffer Irreparable**

17           **Harm if the Court Does Not Grant the Preliminary**

18           **Injunction**.

19      Plaintiffs cannot show that they will suffer irreparable harm if the

20 preliminary injunction they request is not granted.  Mandatory injunctions

21 such as the one Plaintiffs seek are "particularly disfavored" and are not

22 granted "unless extreme or very serious damage will result." *Anderson*, 612

23 F.2d at 1115.  Where there is any doubt as to whether irreparable harm will

24 occur, a mandatory injunction must be denied. *Id.*  Here, not only have

25 Plaintiffs failed to prove that any irreparable harm will occur in the absence of

26 a preliminary injunction, the available evidence clearly shows that irreparable

27 harm ***will not*** occur.

28

D'S MEM. OF P&A IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
Case No. 2:15-CV-02124

Plaintiffs claim that students and staff at the Malibu Campus will suffer irreparable harm if their motion is not granted, but this is not true.  EPA has determined on multiple occasions, based upon a very large data set, that the buildings at the Malibu Campus meet EPA's health-protective standards with respect to PCB exposures, and are safe for occupation.[1]  Supp. Daugherty Decl., ¶¶3, 5, 7, 8.  EPA's October 2014 TSCA approval indicates the PCB materials remaining at the school are safe to remain in place with continued implementation of health-protective best management practices.  *Id*. at ¶8.  EPA has mandated such best management practices for school safety and SMMUSD is implementing them.  *Id*. at ¶¶4, 9, 10.  SMMUSD will continue implementing these health-protective best management practices until the buildings at issue are renovated or demolished.  *Id*. at ¶¶4, 10.

If it were not enough that EPA has deemed the Malibu Campus safe for students and staff, ***SMMUSD itself already plans to undertake the very removal Plaintiffs seek to require through preliminary injunction***—on a timetable approved by EPA and arranged to cause as little disruption to the school year and the learning and working environments of students and staff as possible.  Several of the known and verified locations of PCBs in excess of 50 ppm will be removed prior to June 30, 2015, and any that remain will be safely removed over school breaks in 2015 and early 2016.  ***Every*** existing verified location of PCBs in excess of 50 ppm discovered to date will be removed no later than March 2016.  Supp. Daugherty Decl., ¶4.  SMMUSD is

---

[1] Nevertheless, Plaintiffs include several declarations from teachers and parents citing suspicions and unsubstantiated concerns about health risks at the Malibu Campus, including a few claiming or suggesting that cancer occurrences, headaches and other unspecified health problems were somehow "caused" by PCBs in building materials.  Notably, none of the declarations provides a ***single*** bit of evidentiary or scientific support for these completely unfounded allegations, and indeed, EPA's conclusion has been that actual PCB exposure levels at the Malibu Campus are well within safe limits.  Supp. Daugherty Decl., ¶¶8, 25-29, 30.

already required, during that time frame and beyond, to adhere to best management practices mandated by EPA that will ensure PCB exposures at the Malibu Campus do not pose any adverse health risk.

Even Plaintiffs' own expert cannot establish that there is any threat of harm that would require an acceleration of the remedial timeframe past what EPA has already approved.   Supp. Daugherty Decl., ¶¶12, 13.   Dr. Rosenfeld's declaration only states that PCBs accumulate in the body over time, and therefore longer exposure times could potentially lead to adverse health effects.  Rosenfeld Decl., ¶46.  However, Dr. Rosenfeld provides no data or calculations demonstrating any accumulation of PCBs in students or staff at the Malibu Campus.  Supp. Daugherty Decl., ¶13.  Neither Dr. Rosenfeld's declaration, nor any other of Plaintiffs' supporting declarations or Plaintiffs' moving papers, explain why the planned remediation that is occurring on an EPA-approved timeframe would lead to irreparable harm, or how an earlier remediation would reduce or eliminate such harm.  *Id*. at ¶¶13-15.  Finally, Dr. Rosenfeld's declaration fails to even explain the route of exposure by which the population would be exposed to PCBs in window caulk.  *Id*. at ¶13.

And indeed, assuming any exposure were to occur, there is no harm from remediating on EPA's approved timeframe.  "Because PCBs accumulate over such long averaging times, short term exceedances of the levels will likely cause only small changes to human blood concentrations, and these can be offset by other periods of exposure to lower air levels."  Supp. Daugherty Decl., Exhibit 2.  In other words, EPA has found that even when air concentrations of PCBs exceed health risk levels—which they do not at the Malibu Campus—adverse health effects from such short term exceedances are highly unlikely.  At the Malibu Campus, ***air concentrations of PCBs are***

1  **below health risk levels**, meaning that the already miniscule potential for harm

2  from PCB exposures is reduced to insignificance.  *Id*. at ¶16.  This is a reality

3  EPA recognized when it issued its TSCA approval and confirmed that

4  classrooms on the Malibu Campus are safe and should be accessible to

5  students and staff.  There is no reason why remediation needs to occur any

6  sooner than on the timeframe approved by EPA, which already slates removal

7  to begin over the 2015 summer break.  Plaintiffs have not shown that any

8  harm will result from performing remediation on EPA's existing approved

9  timetable, and indeed, forcing earlier work will only cause disruption to

10  SMMUSD students, teachers, and staff.  *Id*. at ¶¶13-15.  This may not matter

11  to Plaintiffs, but it is of critical importance to SMMUSD and the families it

12  serves.

13       Even if there were somehow a hypothetical risk of PCB exposures at the

14  school, this would not be enough to constitute irreparable harm to support a

15  preliminary injunction.  Plaintiffs "must demonstrate **immediate** threatened

16  injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine*

17  *Service Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis added).

18  "Mere threatened, speculative harm, without more, does not amount to

19  irreparable injury for purposes of justifying preliminary injunctive relief such

20  as that sought by plaintiffs."  *Chemical Weapons Working Group Inc. v. U.S.*

21  *Dept. of Army*, 935 F. Supp. 1206, 1215 (D. Utah 1996) (irreparable injury

22  could not be shown when plaintiffs could not demonstrate that "any plaintiff,

23  or any person at all, would **in fact** be placed at risk by the projected dioxin

24  emissions" associated with incineration of a chemical weapons agent)

25  (emphasis added).  Plaintiffs have not made any showing that any individual at

26  the Malibu Campus would be exposed to PCBs in excess of EPA's health-

27  protective thresholds.  Indeed, safe levels have already been demonstrated

28

D'S MEM. OF P&A IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
Case No. 2:15-CV-02124

through extensive air and wipe sampling conducted by SMMUSD.  Imagining that harmful conditions might exist, with no basis in fact for that assertion, does not meet Plaintiffs' burden to show irreparable harm.

Simply put, Plaintiffs will experience no irreparable harm if the preliminary injunction is not granted.  To the contrary, students and staff will remain safe per EPA's directives and removal activities will be undertaken as EPA has already mandated.

C.   **The Equities Weigh Against Issuing a Preliminary Injunction**.

"The less certain…the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc).  Plaintiffs' burden is greater still because "[t]he basic function of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits," but the mandatory injunction Plaintiffs seek does not aim to preserve the status quo.  *Chalk v. United States Dist. Court Cent. Dist of Cal.*, 840 F.2d 701, 704 (9th Cir. 1988).  Thus, the balance of hardships tips strongly against Plaintiffs.

The injunctive relief Plaintiffs seek imposes great burden on SMMUSD, and for no reason.  Buildings at the Malibu Campus are already safe for students and staff, as confirmed by EPA and as categorically proven through air and wipe sampling.  Supp. Daugherty Decl., ¶¶5, 8, 9.  EPA has already approved the planned remediation under TSCA, and removal activities have already been scheduled.  Where, as here, an application for injunctive relief seeks remediation but plans for remediation are already underway, injunctive relief is inappropriate.  *See Rococo Assocs., Inc. v. Award Packaging Corp.*, 803 F. Supp. 2d 184, 191-92 (E.D.N.Y. 2011) (where the state environmental agency was already overseeing cleanup of a hazardous waste spill, injunctive

1  relief requiring immediate remediation of the spill "would do nothing to

2  improve" the situation and was not granted).

3        EPA has already required removal of specific verified locations where

4  PCB concentrations in building materials exceed 50 ppm by June 30, 2015.

5  The remaining verified locations will be remediated no later than March 2016,

6  pursuant to EPA's mandate.  Supp. Daugherty Decl., ¶4.  Plaintiffs, however,

7  ask not only to accelerate removal activities, but to remove students from the

8  classrooms immediately.   To do so during the final few weeks of the school

9  year would not only run contrary to EPA's directives and TSCA approval, but

10  would result in great expense to SMMUSD and significant disruption to

11  students and staff for no reason.  To avoid this unnecessary expense and

12  inconvenience, EPA mandated that removal of known and verified locations

13  where PCB concentrations exceed 50 ppm could begin over the 2015 summer

14  break, when students and staff are away from school.

15        There is no benefit in requiring removal activities prior to the already-

16  scheduled removal.  Supp. Daugherty Decl., ¶¶13-15.  Air sampling is the

17  recommended method to evaluate potential health risks in classrooms after the

18  removal of PCB materials Plaintiffs seek by their motion.  *Id*. at ¶ 30.

19  Numerous air and wipe samples have ***already*** shown the buildings are safe for

20  occupancy.  *Id*. at ¶¶39-42, 44.  Indeed, air sampling—the benchmark to

21  measure PCB exposures given that inhalation is a primary exposure

22  pathway—shows exposures in many classrooms are below detection

23  levels.  *Id*. at ¶¶40, 42.  This is already as good as or better than the result

24  Plaintiffs would be seeking in compelling the removal of PCB materials (i.e.,

25  air sampling levels safely below EPA's health thresholds for schools).

26        Safe air levels ***already exist*** at the Malibu Campus and EPA has already

27  approved the buildings for occupancy under TSCA.  Requiring immediate

28

1 removal of students from the classroom and accelerated removal of PCB

2 materials at great expense to obtain the same exposure data that sampling has

3 already shown and EPA has already approved is not equitable and benefits no

4 one.   As such, the equities weigh strongly against issuance of a preliminary

5 injunction.

6   **D.**   **The Public Interest Does Not Support Issuance of a**

7      **Preliminary Injunction**.

8    The public interest is not served by seeking unnecessary court

9 involvement in a remediation that is already managed by EPA, the lead agency

10 with jurisdiction over TSCA.  "There is a public interest in deferring to state

11 or regulatory agencies…in matters for and as to which they have actual

12 knowledge or particular expertise."  *Tri-Realty Co. v. Ursinus Coll.*, 2013 WL

13 5298469, *12 (E.D. Pa. Sept. 19, 2013) (citing *Del. River Port Auth. v.*

14 *Transam. Trailer Transp.,* 501 F.2d 917, 923–24 (3d Cir. 1974)).  Here, EPA

15 not only has knowledge and particular expertise with respect to PCBs in

16 schools, but has been granted sole authority under TSCA to enact regulations

17 with respect to PCB use.[2]  Taking this matter out of EPA's capable hands

18 when it has been actively involved not only in the oversight of SMMUSD but

19 at other schools nationwide, and has in place specific policies and procedures

20 to deal with these very issues, is contrary to the public interest.  Beyond that, it

21 would demonstrate an inappropriate lack of deference to the agency's policies

22 and interpretations of its regulations.  *See Auer*, 519 U.S. at 461.

23

24 _____

25 [2] EPA's policy with respect to PCBs in schools is entirely consistent with the
management of other building material contaminants, both in schools and other

26 buildings, regulated under TSCA.  For example, both asbestos and lead paint, though
toxic, can be safely managed in place pursuant to federal regulations with periodic

27 inspections to determine that unsafe exposures do not occur.  15 U.S.C. § 2685; 40

28 C.F.R. § 745.227; 40 C.F.R. § 763.93.

1   Finally, granting this preliminary injunction would subject the District
2   to unnecessary financial burden when EPA has already determined PCB
3   exposures do not present an adverse health risk at the Malibu Campus and
4   removal activities are already scheduled in the coming months, and subverts
5   judicial economy by unnecessarily wasting the Court's time and resources.
6   There is no public interest in issuing the requested preliminary injunction.

7   **V.      CONCLUSION**

8   For the reasons stated above, Defendants respectfully request that this
9   Court deny Plaintiffs' motion for preliminary injunction.

11  Dated:  April 13, 2015                 Respectfully Submitted,

12                                          PILLSBURY WINTHROP SHAW
                                            PITTMAN LLP
13                                          Mark E. Elliott
                                            Julia E. Stein
14
15                                            */s/ Mark E. Elliott*
16                                          Mark E. Elliott
                                            Attorneys for Defendants
17                                          SANDRA LYON ET AL.