## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-2124 PA (AJWx) | Date | December 21, 2015 |
|---|---|---|---|
| Title | America Unites for Kids, et al. v. Sandra Lyon, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes Kerr | Shayna Montgomery | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| Charles Avrith | Mark Erik Elliot<br>Caroline L. Plant<br>Stephanie Amaru |

**Proceedings:**   MOTION FOR SANCTIONS

Before the Court is a Motion for Sanctions filed by defendants Sandra Lyon, Jan Maez, Laurie Lieberman, Jose Escarce, Craig Foster, Maria Leon-Vazquez, Richard Tahvildaran-Jesswein, Oscar de la Torre, and Ralph Mechur (collectively "Defendants") (Docket No. 68).  Defendants seek sanctions, up to and including terminating sanctions, against plaintiffs America Unites for Kids ("America Unites") and Public Employees for Environmental Responsibility ("PEER") (collectively "Plaintiffs").

**I.       Factual and Procedural Background**

Plaintiffs' commenced this action on March 23, 2015.  The operative First Amended Complaint ("FAC"), which Plaintiffs filed as a matter of right, alleges a claim against Defendants, who are administrators and members of the Board of Education of the Santa Monica-Malibu Unified School District (the "District"), pursuant to the Toxic Substances Control Act ("TSCA"), 15 U.S.C. §§ 2601-2695d.  According to the FAC, testing in 2009 and 2010 revealed elevated levels of polychlorinated biphenyls ("PCBs") in air and soil samples at Malibu Middle and High School ("MHS") and Juan Cabrillo Elementary School ("JCES") (collectively the "Malibu Campus").  Additional testing undertaken since then has revealed that caulk and other building materials used at MHS and JCES contain levels of PCBs in excess of standards adopted by the Environmental Protection Agency ("EPA").  The FAC alleges that although the District has, in consultation with the EPA, agreed to remove the PCB-containing materials from certain areas within the schools, Defendants have refused or been slow to test additional areas within MHS and JCES that are also likely to contain building materials with levels of PCBs in excess of those allowed by the EPA.

Pursuant to the TSCA, beginning in 1978, "no person may . . . use any polychlorinated biphenyl in any manner other than in a totally enclosed manner."  15 U.S.C. § 2605(e)(2)(A).  The TSCA also authorizes the EPA Administrator to promulgate rules authorizing the use of PCBs "other than in a totally enclosed manner . . . if the Administrator finds that such . . . use . . . will not present an unreasonable risk of injury to health or the environment."  15 U.S.C. § 2605(e)(2)(B).  The EPA has concluded that items "with PCB at concentrations of 50 ppm or greater present an unreasonable risk of injury to health within the United States."  40 C.F.R. § 761.20.  As a result, "[n]o persons may use any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-2124 PA (AJWx) | Date | December 21, 2015 |
|---|---|---|---|
| Title | America Unites for Kids, et al. v. Sandra Lyon, et al. | | |

PCB, or any PCB item regardless of concentration, in any manner other than in a totally enclosed manner . . . ." 40 C.F.R. § 761.20(a).

Defendants do not dispute that caulk containing PCBs is not use of PCBs in "a totally enclosed manner." Moreover, Defendants appear to acknowledge that the TSCA requires the removal of PCB-containing building materials when testing indicates that those materials contain PCBs in excess of 50 ppm. Specifically, Defendants have committed to removing the PCB-containing caulk in the specific locations identified in their testing because that caulk contains concentrations of PCBs in excess of 50 ppm.

However, according to Defendants, and consistent with the EPA's nationwide "PCBs in Schools" policy, EPA has authorized the District to allow PCB-containing materials to remain at the school so long as air and surface wipe testing does not reveal heightened levels of PCBs. For instance, in August 2014, EPA informed the District that "EPA does not recommend additional testing of caulk unless dust or air samples persistently fail to meet EPA's health-based guidelines." (Docket No. 43, Defendant's Request for Judicial Notice, Ex. C.) Additionally, in October 2014, EPA approved certain provisions of the District's "Site-Specific PCB-Related Building Materials Management, Characterization and Remediation Plan for the Library and Building E Rooms 1, 5, and 8 at Malibu High School." (Id., Ex. D.) Among other approvals, EPA approved:

- Best Management Practices (BMPs), including proper maintenance of the ventilation system at the schools, increased cleaning of the classrooms to reduce dust and residue buildup, and use of cleaning equipment that does not cause dust to become airborne. . . .

- Periodic air and surface wipe samples shall be collected to monitor the efficacy of the above remediation and BMP measures until major renovation or demolition occurs that results in removal of PCB-contaminated material. The District shall undertake monitoring, as identified in the Application, through July 1, 2015. Based upon data collected during this initial monitoring period, the District will propose for EPA approval a supplement to the Application to include a new monitoring plan for the period after July 1, 2015. The plan shall include an evaluation of monitoring data collected to date and a description of how the monitoring plan will continue to ensure the effectiveness of the remediation and BMP measures as evaluated against the levels identified in the following bullet. . . .

- All air samples gathered by the District shall be evaluated against the applicable EPA public health levels of PCBs in air . . . (those levels range from 70 to 600 $ng/m^3$ based on the age of the children and the duration of exposure), and all surface wipe samples shall be evaluated against the district's proposed goal of 1 $ug/100cm^2$. These air and surface wipe concentrations are health-based screening levels that, pursuant to this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 15-2124 PA (AJWx) | Date | December 21, 2015 |
| Title | America Unites for Kids, et al. v. Sandra Lyon, et al. | | |

approval, will be used to evaluate the effectiveness of the remediation and BMP measures at ensuring that PCBs remain at levels protective of human health. If any samples exceed these levels, within thirty (30) days of receipt of the laboratory results, the District shall conduct an evaluation of the exceedances. . . .

(Id.)

Soon after filing their Complaint, Plaintiffs filed an Ex Parte Application to Accelerate Discovery. (Docket No. 18.) As part of that Ex Parte Application, Plaintiffs sought, pursuant to Federal Rule of Civil Procedure 34, an order allowing them to enter the Malibu Campus to conduct sampling of building materials to test for the presence of PCBs prior to the Scheduling Conference. In seeking that expedited discovery, Plaintiffs represented that the discovery they sought was necessary because "[t]here is no other way these results can be obtained." (Docket No. 18, Mem. in Support of Ex Parte Appl. 5:27). Plaintiffs also stated their intention to seek reimbursement of the costs of the sampling at the end of the case pursuant to 15 U.S.C. § 2619(e). (Id. at 6 n.4.) Although the Court allowed the parties to commence discovery prior to the Scheduling Conference, it denied Plaintiffs permission to conduct the site inspection and sampling on the expedited schedule they sought. (Docket No. 36.) The Court advised the parties that it expected them to "work cooperatively to schedule their discovery and to resolve most if not all disputes without the intervention of the Magistrate Judge or this Court." (Id.)

After Defendants had filed their Motion to Dismiss challenging the sufficiency of the FAC, but before the hearing date for that Motion, Plaintiffs filed a Motion to Compel. (Docket No. 52.) As in their Ex Parte Application, Plaintiffs again sought an order allowing them to conduct sampling and testing at the Malibu Campus. According to Plaintiffs, the "additional testing" they sought to conduct pursuant to their Rule 34 inspection demand "would provide irrefutable support for Plaintiffs' claim." (Id. at 13:28.) Plaintiffs again stated their intention to seek reimbursement for their testing expenses at the successful conclusion of the litigation pursuant to 15 U.S.C. § 2619(e). (Id. at 3 n.3.)

In their Motion to Dismiss, Defendants asserted, among other arguments, that the FAC should be dismissed, or, in the alternative, that the action be stayed because the EPA has primary jurisdiction over the testing requirements and removal of PCBs in schools. The primary jurisdiction doctrine "is applicable whenever the enforcement of a claim subject to a specific regulatory scheme requires resolution of issues that are 'within the special competence of an administrative body.'" Farley Transp. Co. v. Santa Fe Trail Transp. Co., 778 F.2d 1365, 1370 (9th Cir. 1985) (quoting United States v. W. Pac. R.R., 352 U.S. 59, 64, 77 S. Ct. 161, 165, 1 L. Ed. 2d 126 (1956)). When the primary jurisdiction doctrine applies, "the judicial process should be suspended and the issues referred to the appropriate administrative body for its views." Id. "No fixed formula . . . exists for applying the doctrine, and each case must be examined on its own facts to determine if 'the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation.'" Id. (quoting W. Pac. R.R., 352 U.S. at 64, 77 S. Ct. at 165).

Plaintiffs opposed the Motion to Dismiss by arguing that the primary jurisdiction doctrine is inapplicable where, as here, the statutory scheme includes a citizen suit provision. See 15 U.S.C. §

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-2124 PA (AJWx) | Date | December 21, 2015 |
|---|---|---|---|
| Title | America Unites for Kids, et al. v. Sandra Lyon, et al. | | |

2619; see also N.Y. Cmtys. for Change v. N.Y. City Dept. of Educ., No. 11CV3494 (SJ)(CLP), 2013 WL 1232244, at *6 (E.D.N.Y. Mar. 26, 2013); Ass'n of Irritated Residents v. Fred Schakel Dairy, No. 1:05-CV-00707 OWW SMS, 2008 WL 850136, at *12 (E.D. Cal. Mar. 28, 2008) ("Like the majority of these courts, I find that applying the doctrine of primary jurisdiction to citizen suits would frustrate Congress's intent, as evidenced by its provisions for citizen suits, to facilitate broad enforcement of environmental-protections laws and regulations.'") (quoting Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc., 173 F.R.D. 275, 284 (D. Colo. 1997)).

  In denying the Motion to Dismiss, the Court concluded that Defendants had overstated the degree to which the relief Plaintiffs seek conflicts with EPA's expertise and considered judgment. Specifically, at a minimum, air and surface wipe sampling at the subject schools is not inconsistent with the EPA's analysis, policies, or considered judgment and the FAC alleged sufficient facts to satisfy the Twombly plausibility standard that there are locations within the subject schools that have not been subject to air and surface wipe sampling that may exceed the EPA's thresholds for PCBs and trigger the need for BMPs, thorough cleanings, and potential further testing, including of caulk, within such locations. The Minute Order denying the Motion to Dismiss explained:

> Such air and surface wipe testing would be consistent with the EPA's regulatory authority and the prior approvals it has issued to the District. If those tests revealed circumstances requiring additional testing or other measures consistent with the EPA's approvals, those additional measures would also not interfere with the EPA's expertise or primary jurisdiction. There is only a possibility of interference with the EPA's primary jurisdiction if the Court were to allow testing in excess of that deemed prudent by the EPA. At least at this stage of the proceedings, the Court can eliminate the possibility of such interference by limiting the testing that Plaintiffs are allowed to undertake through the discovery process to the air and surface wipe testing that the EPA has determined is sufficient to measure "health-based screening levels that, pursuant to [the EPA's October 2014] approval, will be used to evaluate the effectiveness of the remediation and BMP measures at ensuring that PCBs remain at levels protective of human health." By phasing discovery in this way, and only allowing the testing of caulk or other more invasive discovery should the initial air and surface wipe testing establish its necessity, the Court can balance the EPA's expertise in such matters against Plaintiffs' rights to pursue a TSCA claim as contemplated by the TSCA's citizen suit provisions. The Court therefore will not dismiss this action based on the primary jurisdiction doctrine.

(Docket No. 53, June 15, 2015 Minute Order at 5.)

  On June 29, 2015, after receiving the Court's Minute Order, Plaintiffs filed a Notice of Withdrawal of their Motion to Compel. (Docket No. 57.) In that Notice of Withdrawal, Plaintiffs stated that they "may seek reconsideration of the Court's rulings concerning discovery in the June 15, 2015

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 15-2124 PA (AJWx) | Date | December 21, 2015 |
| Title | America Unites for Kids, et al. v. Sandra Lyon, et al. | | |

Order, and in the event such reconsideration is granted, Plaintiffs will re-notice the Motion if necessary." (Id.) Plaintiffs expressed an intention to serve a "revised request to enter onto land under Fed. R. Civ. P. 34(a)(2) to proceed with the type of discovery approved by the Court in its June 15, 2015 Order." (Id.)

On August 10, 2015, the parties submitted their Rule 26(f) Joint Report. In the Joint Report, Plaintiffs stated that they "intend to make a motion for reconsideration of that portion of the Court's June 15, 2015 Order stating that discovery should be limited initially to air and surface wipe sampling, and that the testing of caulk 'or other more invasive discovery' should be allowed only if the initial air and wipe sampling reveals PCBs in excess of EPA's 'health-based screening levels.'" (Docket No. 59.)

Plaintiffs in fact filed their Motion for Reconsideration on August 24, 2015. (Docket No. 63.) In their Motion for Reconsideration, Plaintiffs argued that "[d]enying Plaintiffs their right to test building materials would prevent Plaintiffs from obtaining evidence to support their allegations of violations of TSCA . . . ." (Id. at 9:10-12.) Plaintiffs also asserted that "[t]esting of caulk and other building materials is the only way to identify violations of TSCA's 50 ppm limitation, and thus the only means to obtain evidence to support the allegations in the FAC." (Id. at 8:1-4.)

The Court denied the Motion for Reconsideration on September 30, 2015. (Docket No. 67.) In rejecting Plaintiffs' arguments, the Court noted:

> Although the TSCA prohibits the use of PCBs, EPA has determined, both generally with its "PCBs in Schools" policy, and with its approval of the District's "Site-Specific PCB-Related Building Materials Management, Characterization and Remediation Plan" that PCB-containing materials may remain at schools so long as air and surface wipe testing does not reveal heightened levels of PCBs. The EPA has far more expertise in this area than does the Court, and is in a much better position to balance the significant costs of requiring school districts throughout the country to test and remove PCB-containing caulk and other building materials against the potential health risks of leaving those products in place until school buildings undergo planned renovations or demolitions. To allow the testing of caulk without air and surface wipe testing first showing levels of PCBs in excess of the EPA's health-based screening levels would expose schools to extraordinarily costly, and what the EPA has deemed unnecessary, testing and remediation expenses.

(Id.) The Court additionally concluded that its "phasing of discovery, and making the invasive testing of caulk dependent upon threshold evidence obtained from air and surface wipe testing" was within its "broad discretion" to "'permit or deny discovery." (Id. (quoting Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002)).)

In an email sent to Superintendent Lyon dated October 29, 2015, Plaintiffs provided Defendants with the results of testing performed by Plaintiffs that purport to show levels of PCBs in caulk at the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-2124 PA (AJWx) | Date | December 21, 2015 |
|---|---|---|---|
| Title | America Unites for Kids, et al. v. Sandra Lyon, et al. | | |

Malibu Campus that exceed the EPA's 50 ppm thresholds. (Docket No. 68, Decl. of Douglas Daugherty, Ex. F.) Plaintiffs' email asks the District to "insure that these rooms are fully and promptly remediated. In addition, because every room tested in Buildings G, E and I is above legal limits, it is clear that these entire buildings are contaminated and remediation of the entire buildings should occur." (Id.) The email, which is signed by Jennifer DeNicola ("DeNicola"), the president of America Unites, and Jeff Ruch, the executive director of PEER, concludes by asking Superintendent Lyon to "respond to this email with what action you will be taking to address this serious violation of Federal law." (Id.)

In support of Plaintiffs' October 29, 2015 email, Plaintiffs submitted to Defendants laboratory records for samples purportedly obtained at the Malibu Campus by Plaintiffs. (Docket No. 68, Exs. 2, 3, 6 & 7.) These laboratory results identity samples obtained at the Malibu Campus on June 4, 2015, and June 8, 2015. (Id., Ex. 2.) DeNicola is identified as the "sampler" who obtained those samples. (Id.) Brenton Brown, who is identified on America Unites' website as part of America Unites' "Leadership Team" and as an "AU Advocate," submitted samples he purportedly obtained from the Malibu Campus on August 5, 2015. (Id., Exs. 3 & 4.) DeNicola is identified as the "sampler" for additional samples she collected at the Malibu Campus on August 5, August 21, and September 21, 2015. (Id., Exs. 6 & 7.)

According to Emily Huffman, a speech pathologist employed by the District at JCES, she encountered a woman she later identified as DeNicola and an unidentified man in Huffman's classroom at JCES at around 2 p.m. on October 9, 2015. (Docket No. 68, Decl. of Emily Huffman ¶¶ 1 & 3.) According to Huffman, DeNicola began telling her "about a lawsuit that was going on." (Id., ¶ 6.) Both the man and DeNicola were carrying box cutters and re-sealable bags. (Id., ¶ 7.) DeNicola and the man "cut some material from around the bottom of the interior window frame of the window that is directly behind [Huffman's] teaching table." (Id.) Huffman observed DeNicola and the man remove material from around the window frame of an adjoining classroom. (Id., ¶ 8.) Before leaving Huffman's classroom, the man and DeNicola told Huffman that she "should not tell my principal that they had been in my classroom, or what they were doing there." (Id., ¶ 10.)

DeNicola admits that "America Unites was involved in the 'independent' testing of caulk samples from the Malibu Schools by EPA-certified labs in the summer of 2015." (Docket No. 70, Decl. of Jennifer DeNicola, ¶ 8.) In addition to notifying Defendants of the test results, Plaintiffs have provided copies of the test results to the EPA and Congressman Ted Lieu. (Id.) After learning about the testing conducted by America Unites, the District reported it to the Los Angeles County Sheriff's Department. According to the District, because some of the testing disturbed areas that the District's environmental consultant had recently remediated, the damage caused by the testing may cost between $90,000 and $120,000 to repair. Plaintiffs dispute that the damage will be that expensive to repair. After an investigation, the matter was referred to the Los Angeles County District Attorney's Office. The District Attorney has declined to prosecute DeNicola and Matthew DeNicola, who is presumably the unidentified man who accompanied DeNicola on October 9, 2015, for felony vandalism and trespassing. (Id., Ex. A.)

Defendants filed the present Motion for Sanctions seeking terminating sanctions, or other lesser sanctions the Court deems appropriate, as a result of Plaintiffs' testing at the Malibu Campus. Defendants initially noticed their Motion for Sanctions for a hearing before the United States Magistrate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-2124 PA (AJWx) | Date | December 21, 2015 |
|---|---|---|---|
| Title | America Unites for Kids, et al. v. Sandra Lyon, et al. | | |

Judge assigned to this action and identified the Motion as a discovery matter. Because the Motion for Sanctions implicates the alleged violations of this Court's orders, rather than discovery orders entered by the Magistrate Judge, this Court transferred consideration of the matter from the Magistrate Judge to this Court for resolution.

**II.      Legal Standard**

Defendants base their Motion for Sanctions on both Federal Rule of Civil Procedure 37 and the Court's inherent authority. Federal Rule of Civil Procedure 37 authorizes a court to sanction a party that "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). The Ninth Circuit "has foreclosed the application of Rule 37 sanctions . . . where a party's alleged discovery-related misconduct is not encompassed by the language of the rule." Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp., 982 F.2d 363, 368 (9th Cir. 1992). Because Plaintiffs have not violated "an order to provide or permit discovery," the Court concludes that Rule 37 does not authorize the issuance of sanctions in circumstances such as these, where a party has not violated an order requiring it to provide or permit discovery, but has obtained evidence without utilizing one of the methods for obtaining discovery contemplated by the Federal Rules of Civil Procedure.

Although Rule 37 does not provide an appropriate basis for sanctioning the conduct Plaintiffs have engaged in, courts have inherent power "'to impose sanctions for discovery abuses that may not be a technical violation of the discovery rules.'" Halaco Eng'g Co. v. Costle, 843 F.2d 376, 380 (9th Cir. 1998). Courts also possess the inherent authority to sanction a party for the "willful disobedience of a court order." Chambers v. NASCO, Inc., 501 U.S. 32, 45, 111 S. Ct. 2123, 2133, 115 L. Ed. 2d 27 (1991) (citation omitted). These "inherent powers" enable courts "to manage their cases and courtrooms effectively and to ensure obedience to their orders." F.J. Hanshaw Enters. v. Emerald River Dev., Inc., 244 F.3d 1128, 1136 (9th Cir. 2001). "Through this power, courts have the ability to punish conduct both within their confines and beyond, regardless of whether that conduct interfered with trial." Id. A party may be subject to sanctions when it has "engaged in conduct utterly inconsistent with the orderly administration of justice." Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th Cir. 1983).

Under their inherent authority, courts have broad discretion to "fashion an appropriate sanction for conduct which abuses the judicial process." Chambers, 501 U.S. at 44-45, 111 S. Ct. at 2133. Inherent powers sanctions are available "in response to abusive litigation practices . . . and to insure the orderly administration of justice and the integrity of the court's orders." Halaco Eng'g, 843 F.2d at 380 (citations omitted). "As a function of this power, courts can dismiss cases in their entirety, bar witnesses, award attorney's fees and assess fines." F.J. Hanshaw, 244 F.3d at 1136 (citations omitted); see also Fink v. Gomez, 239 F.3d 989, 992 (9th Cir. 2001) ("[T]he district court has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct."). "When choosing among possible sanctions, the district court may consider the deterrent value of an order of dismissal on future litigants as well as on the parties." Wyle, 709 F.2d at 589 (citing Nat'l Hockey Leauge v. Metro. Hockey Club, Inc., 427 U.S. 639, 643, 96 S. Ct. 2778, 2781, 49 L. Ed. 2d 747 (1976)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 15-2124 PA (AJWx) | Date | December 21, 2015 |
| Title | America Unites for Kids, et al. v. Sandra Lyon, et al. | | |

"Before awarding sanctions pursuant to its inherent power, 'the court must make an express finding that the sanctioned party's behavior constituted or was tantamount to bad faith.'" Haeger v. Goodyear Tire & Rubber Co., 733 F.3d 1122, 1132 (9th Cir. 2015) (quoting Leon v. IDX Sys. Corp., 464 F.3d 951, 961 (9th Cir. 2006)). The Ninth Circuit has "found bad faith in a variety of conduct stemming from 'a full range of litigation abuses.'" Id. at 1132-33 (quoting Chambers, 501 U.S. at 46, 111 S. Ct. at 2134). For inherent power sanctions to be proper, "the conduct sanctioned must be due to 'willfulness, fault, or bad faith.'" Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 348 (9th Cir. 1995) (quoting Henry v. Gill Indus., Inc., 983 F.2d 943, 946 (9th Cir. 1993)); see also Evon v. Law Offices of Sidney Mickell, 688 F.3d 1015, 1035 (9th Cir. 2012) ("[A] district court has the inherent power to sanction for: (1) willful violation of a court order; or (2) bad faith. A determination that a party was willfully disobedient is different from a finding that a party acted in bad faith. Either supports the imposition of sanctions."); id. ("[I]t is clear that a 'willful' violation of a court order does not require proof of mental intent such as bad faith or an improper motive, but rather, it is enough that a party acted deliberately."); Unigard Sec. Ins., 982 F.2d at 368 n.2 ("This court has, since Roadway Express, Inc. v. Piper, 447 U.S. 752, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980)], confirmed the power of the district court to sanction under its inherent powers not only for bad faith, but also for willfulness or fault by the offending party."); Halaco Eng'g, 843 F.2d at 380 ("In cases where the drastic sanctions of dismissal or default or ordered, the range of discretion for a district court is narrowed and the losing party's non-compliance must be due to willfulness, fault, or fad faith.").

A sanction of dismissal implicates due process concerns requiring "that there exist a relationship between a sanctioned party's misconduct and the matters in controversy such that the transgression 'threatens to interfere with the rightful decision of the case.'" Anheuser-Busch, 69 F.3d at 348 (quoting Wyle, 709 F.2d at 591). Although district courts have discretion to fashion sanctions under their inherent powers, before imposing the "harsh sanction" of dismissal, the district court must weigh several factors:

> (1) the public's interest in expeditious resolution of litigation; (2) the
> court's need to manage its dockets; (3) the risk of prejudice to the party
> seeking sanctions; (4) the public policy favoring disposition of cases on
> their merits; and (5) the availability of less drastic sanctions.

Id. (quoting Henry, 983 F.2d at 948). According to the Ninth Circuit, "where a court order is violated, factors 1 and 2 support sanctions and 4 cuts against case-dispositive sanctions, so 3 and 5, prejudice and availability of lesser sanctions, are decisive." Valley Eng'rs Inc. v. Electric Eng'g Co., 158 F.3d 1051, 1057 (9th Cir. 1998). Prejudice exists when a party's conduct "threaten[s] to interfere with the rightful decision of the case." Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990). The Ninth Circuit has said, however, that the prejudice factor "is purely optional." Halaco Eng'g, 843 F.2d at 382; see also Anheuser-Busch, 69 F.3d at 353 ("Admittedly, the decisions of this circuit send conflicting signals as to whether prejudice to the party moving for dismissal must be demonstrated for dismissal to be considered an appropriate sanction pursuant to the court's inherent power."). In determining if a district court has properly considered the adequacy of less drastic sanctions, the Ninth Circuit considers:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 15-2124 PA (AJWx) | Date | December 21, 2015 |
| Title | America Unites for Kids, et al. v. Sandra Lyon, et al. | | |

>    (1) whether the district court explicitly discussed the feasibility of less
>    drastic sanctions and explained why such alternate sanctions would be
>    inappropriate; (2) whether the district court implemented alternate
>    sanctions before ordering dismissal; and (3) whether the district court
>    warned the party of the possibility of dismissal before ordering dismissal.

Anheuser-Busch, 69 F.3d at 352 (citing Adriana Int'l, 913 F.2d at 1412-13).

### III.    Analysis

In their Opposition to the Motion, Plaintiffs assert that despite the fact that the Court has entered three orders denying their efforts to conduct a Rule 34 inspection of the Malibu Campus for the purpose of conducting destructive testing, "this does not mean that Plaintiffs could not engage in any sampling and testing outside of the discovery process. The case law is clear that parties may gather evidence outside of the discovery process and that such evidence is admissible in court." (Docket No. 68, Pls.' Opp'n. 22:17-21 (citing L.A. News Serv. v. CBS Broad., Inc. 305 F.3d 924, 933-34 (9th Cir. 2002)).) Plaintiffs also rely on language in Grabau v. Target Corp., No. 06-CV-1308-WDM-KLM, 2008 WL 616068, at *3 (D. Colo. Feb. 29, 2008), to support their contention that "a party may enter the other party's premises and gather evidence which is admissible in court outside of Rule 34 procedures." (Docket 68 at 23:9-26.)

Plaintiffs arguments are refuted by their prior actions in this litigation and substantial case law that establishes that parties are subject to sanctions, including dismissal, when they acquire evidence in an illegal or otherwise wrongful manner. First, if Plaintiffs did not need to utilize the procedures of Rule 34 to lawfully and legitimately conduct testing of building materials at the Malibu Campus, then their filing of the Ex Parte Application for Expedited Discovery, Motion to Compel, and Motion for Reconsideration, would not have been necessary and they and their counsel would be subject to sanctions for unnecessarily multiplying these proceedings under the Court's inherent authority and 28 U.S.C. § 1927. But Plaintiffs were right the first three times they sought permission from the Court to conduct destructive testing at the Malibu Campus through the discovery process because, while a party may not violate Rule 34 by conducting a nondestructive unannounced inspection of an area open to the public as was apparently the case in Grabau, there is no authority that allows a party to enter onto the property of another, damage that property, and remove items from the property without permission. In fact, doing so exposes that party to tort and criminal liability. See, e.g. Cal. Penal Code § 594(a) ("Every person who maliciously commits any of the following acts with respect to any real or personal property not his or her own . . . is guilty of vandalism . . . (2) Damages."); Cal. Penal Code § 602(c) ("[E]very person who willfully commits a trespass by . . . [m]aliciously injuring or severing from the freehold of another anything attached to it . . . [is guilty of a misdemeanor] ."); see also Cal. Penal Code § 7(4) (defining "maliciously" to mean "a wish to vex, annoy, or injure another person, or an intent to do a wrongful act . . . .").[1]

---

[1]    The fact that the District Attorney chose not to prosecute DeNicola does not absolve her of the consequences for her wrongful conduct. Bad faith, not the filing of criminal charges or a guilty verdict,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-2124 PA (AJWx) | Date | December 21, 2015 |
|---|---|---|---|
| Title | America Unites for Kids, et al. v. Sandra Lyon, et al. | | |

Contrary to Plaintiffs' arguments, courts readily distinguish between evidence acquired legitimately outside of discovery procedures and wrongfully acquired evidence. Courts have uniformly concluded that parties who engage in intentional wrongful conduct to acquire evidence outside of the discovery process are subject to sanctions. See Lynn v. Gateway Unified Sch. Dist., No. 2:10-CV-981-JAM-CMK, 2011 WL 6260362, at *5 (E.D. Cal. Dec. 16, 2011) ("When a party wrongfully obtains documents outside the normal discovery process, a number of different types of sanctions are available. These include dismissal of the action, the compelled return of all documents, restrictions regarding the use of the documents at trial, disqualification of counsel, and monetary sanctions. Courts have considerable discretion in choosing the appropriate sanction under its inherent authority and may, for example, dismiss claims, enter default judgment, and award attorney's fees and costs."); Ashman v. Solectron Corp., No. C 08-1430 JF (HRL), 2008 WL 5071101, at *2 (N.D. Cal. Dec. 1, 2008) (same); Jackson v. Microsoft Corp., 211 F.R.D. 423, 431 (W.D. Wash. 2002) (holding that a theft of 10,000 emails from employer "was egregious in the extreme" and concluding that a "theft on this scale would be sufficient reason to justify dismissal"); Perna v. Elec. Data Sys. Corp., 916 F. Supp. 388, 399-400 (D.N.J. 1995) (litigant who copied documents left by opposing counsel during lunch break "fully understood that he was committing an unauthorized act, and his surreptitious behavior demonstrates the wrongfulness of his actions"); id. at 400 ("An innocent bystander who inadvertently stumbles upon documents does not photocopy their contents, Perna admitted he knew these documents were relevant to this litigation and his actions in duplicating them were wrong. . . . This conduct evidences a willful and improper design to avoid the rules of discovery and gain an unpermitted advantage.").

Indeed, "a court must be able to sanction a party that seeks to introduce improperly obtained evidence; otherwise the court, by allowing the wrongdoer to utilize the information in litigation before it, becomes complicit in the misconduct." Fayemi v. Hambrecht & Quist, Inc., 174 F.R.D. 319, 342 (S.D.N.Y. 1997); see also id. ("[T]he court . . . has the inherent authority to sanction a party who attempts to use in litigation material improperly obtained outside the discovery process."); see also Greviskes v. Universities Research Ass'n, Inc., 417 F.3d 752, 757, 759 (7th Cir. 2005) (Plaintiff's impersonation of her supervisor in a fax to request that the supervisor's payroll records be sent to plaintiff was "'fraudulent, criminal, and inexcusable," and "fraudulent conduct" that "is an affront to the legal process" that "[n]o court should be asked to tolerate . . . in any circumstance.")

As Plaintiffs' own briefing in support of their Motion to Compel and Motion for Reconsideration make clear, Plaintiffs understood that the Court's orders denying the Rule 34 inspection they sought, and phasing discovery so that destructive testing could only occur once air and surface wipe testing established its necessity, prevented Plaintiffs from conducting the discovery that they believed was necessary because, in their words, "[t]here is no other way these results can be obtained." (Docket No. 18, Mem. in Support of Ex Parte Appl. 5:27). Despite those orders, Plaintiffs' clear understanding of them, and Plaintiffs professed understanding that their inspection demand made pursuant to Rule 34 was the only method for obtaining that evidence, DeNicola and Brenton Brown repeatedly entered the Malibu Campus, caused damage in the process of collecting their samples, and removed items from the

---

is the threshold for conduct that exposes the wrongdoer to the imposition of inherent power sanctions. See, e.g., Anheuser-Busch, 69 F.3d at 348.

Case 2:15-cv-02124-PA-AJW   Document 76   Filed 12/21/15   Page 11 of 14   Page ID #:2919

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-2124 PA (AJWx) | Date | December 21, 2015 |
|---|---|---|---|
| Title | America Unites for Kids, et al. v. Sandra Lyon, et al. | | |

location without the District's permission. Moreover, DeNicola's efforts to conceal her activities by asking Emily Huffman not to report DeNicola's actions to Huffman's principal establish that DeNicola knew that her conduct was wrongful and "constituted or was tantamount to bad faith.'" Haeger, 733 F.3d at 1132.

"Disagreement with the court is not an excuse for failing to comply with court orders." Adriana Int'l, 913 F.2d at 1411. Rather than seek review of the Court's orders, DeNicola and Brenton Brown, took the law into their own hands. As DeNicola admits, "America Unites was involved in the 'independent' testing of caulk samples from the Malibu Schools . . . in the summer of 2015." (Docket No. 70, Decl. of Jennifer DeNicola, ¶ 8.) Contrary to Plaintiffs' description of their collection of samples from the Malibu Campus as "independent testing," their actions constituted unauthorized testing. By submitting the results of this unauthorized testing to the District, the EPA, and Congressman Lieu, America Unites and PEER attempted to benefit from this wrongful conduct and force the District to remove all of the building materials Plaintiffs suspect contain PCBs in excess of the EPA's limits. This is exactly the same relief Plaintiffs seek in this action.

The unauthorized testing performed by America Unites, and PEER's efforts to benefit from it, constitute willful violations of the Court's orders and, even without reference to the Court's orders, is an affront to the judicial process. Specifically, by conducting the unauthorized testing, Plaintiffs threatened "the orderly administration of justice and the integrity of the court's orders." Halaco Eng'g, 843 F.2d at 380. Having filed this action in this Court, and implicitly agreeing to resolve their dispute in this forum, Plaintiffs agreed to be bound by this Court's procedures and rulings. Their resort to "self-help" subverts the Court's orders and the orderly administration of justice. Additionally, by wrongfully acquiring evidence and presenting that evidence to the District, the EPA, and Congressman Lieu, Plaintiffs have attempted to obtain the relief they seek in this action in a manner that conflicts with how the Court had ordered that this action proceed. As a result, Plaintiffs conduct "threatens to interfere with the rightful decision of the case." Wyle, 709 F.2d at 591. By threatening to interfere with the rightful decision of the case, Plaintiffs have prejudiced Defendants. See Adriana Int'l, 913 F.2d at 1412 ("A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case.").

The Court therefore concludes that this repeated intentional conduct, committed despite this Court's repeated orders prohibiting the testing that DeNicola and Brenton Brown conducted, establishes by clear and convincing evidence the willful and bad faith conduct necessary for the imposition of sanctions under the Court's inherent power.

In assessing the five factors to determine if the "harsh sanction" of dismissal is warranted, the Court concludes that the first and second factors, the public's interest in expeditious resolution of litigation and the Court's need to manage its dockets, only weakly support dismissal because Plaintiffs' actions have not caused a delay in the Court's trial schedule. See Anheuser-Busch, 69 F.3d at 348. Additionally, although Defendants have been prejudiced by Plaintiffs' actions, and the third prejudice factor therefore weighs in favor of harsh sanctions, that prejudice is somewhat less significant than it otherwise might appear because Defendants have not been deprived of evidence necessary for their defense and an order precluding Plaintiffs from using the wrongfully obtained evidence can ameliorate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 15-2124 PA (AJWx) | Date | December 21, 2015 |
| Title | America Unites for Kids, et al. v. Sandra Lyon, et al. | | |

whatever prejudice Defendants would face in this action. The fourth factor, favoring disposition of cases on their merits, weighs strongly against terminating sanctions. This is particularly true in this instance, where the public interest in enforcing environmental laws is significant. See United States v. Nat'l Med. Enters., Inc., 792 F.2d 906, 913 (9th Cir. 1986) ("[I]n cases such as this that implicate important public policy concerns, the district court should weigh the public interest in the case prior to granting dismissal.").

Finally, and most importantly in these circumstances, the Court concludes that less drastic sanctions than dismissal are available. In reaching this conclusion, the Court notes that the Court has not previously implemented alternate sanctions. Nor has the Court warned Plaintiffs of the possibility of dismissal before ordering dismissal. See Anheuser-Busch, 69 F.3d at 352; but see Adriana Int'l, 913 F.2d at 1413 ("We have held that an explicit warning is not always necessary."). In declining to issue terminating sanctions at this time, the Court does not intend to minimize the conduct Plaintiffs have engaged in. The Court believes that Plaintiffs' pattern of unauthorized, illegal, and wrongful testing is an outrageous abuse of the judicial process. Moreover, by showing no remorse for their conduct, and disingenuously attempting to minimize that conduct in their Opposition to the sanctions motion, Plaintiffs and their counsel have threatened to undermine the integrity of the Court's orders.

Accordingly, significant sanctions short of dismissal are necessary and appropriate in this instance. Plaintiffs, who have so far shown precious little regard for their obligations to conduct themselves in accordance with the Federal Rules of Civil Procedure and this Court's orders, must understand that there are significant consequences for threatening the orderly administration of justice and willfully violating the Court's orders. Plaintiffs and other litigants must understand that courts will not tolerate the unauthorized, wrongful, and criminal gathering of evidence and the willful violations of court orders. Merely ordering that Plaintiffs be precluded from using their ill-gotten evidence in this action, though necessary, does not properly deter Plaintiffs and other litigants from engaging in such conduct, because they would be no worse off than if they had not engaged in this conduct and violated the Court's orders. See Nat'l Hockey Leauge, 427 U.S. at 643, 96 S. Ct. at 2781 ("[T]he most severe in the spectrum of sanctions must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.").

Having concluded that Plaintiffs must be sanctioned, but that those sanctions will not, at this point, include dismissal of the action, the Court imposes the following sanctions:

1. Plaintiffs are precluded from using in this action the evidence obtained through their unauthorized testing. By "unauthorized testing," the Court includes all testing conducted by Plaintiffs and those affiliated with them both before the initiation of this action and any testing that has occurred since the commencement of this action that was conducted without the permission of Defendants or authorized by this Court. The Court further orders that this is an issue preclusion sanction barring Plaintiffs from using the facts obtained by their unauthorized testing in this or any future litigation. See Taylor v. Sturgell, 553 U.S. 880, 892, 128 S. Ct. 2161, 2171, 171 L. Ed. 2d 155 (2008) ("Issue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-2124 PA (AJWx) | Date | December 21, 2015 |
|---|---|---|---|
| Title | America Unites for Kids, et al. v. Sandra Lyon, et al. | | |

        resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim.") (quoting New Hampshire v. Maine, 532 U.S. 748, 748-49, 121 S. Ct. 1808, 1814, 149 L. Ed. 2d 968 (2001)); Wyle, 709 F.2d at 592 ("[A] punitive dismissal is equivalent to an adjudication on the merits.").

2. America Unites and DeNicola are ordered, jointly and severally, to pay to the District the amount of money reasonably necessary to repair the physical damage to the Malibu Campus caused by the unauthorized testing.[2] The parties shall meet and confer to discuss a briefing schedule and any necessary evidence needed to substantiate the amount of damage caused by the unauthorized testing. The parties shall file a Joint Report, no later than January 11, 2016, with their proposals for determining the amount of this compensatory monetary sanction.

3. Plaintiffs shall pay to Defendants the reasonable attorneys' fees incurred by Defendants' counsel to prepare the Motion for Sanctions. Defendants shall file a brief and supporting evidence establishing the reasonableness of the fees incurred to prepare the Motion for Sanctions by no later than January 11, 2016. Plaintiffs may file an opposition to the brief that challenges the amount of the attorneys' fees, but not the propriety of the issuance of this sanction, by no later than January 19, 2016. After that date, the Court will take the matter under submission.

4. To deter Plaintiffs and other parties from engaging in similar conduct in the future, the Court strikes Plaintiffs' prayer for costs, expert witness fees, testing costs, and attorneys' fees pursuant to 15 U.S.C. § 2619(e). The Court will not award any such amounts to Plaintiffs in this action. The Court concludes that this sanction is warranted both for its deterrent value, and because Plaintiffs, by repeatedly stating that they reserved their rights to recover the costs of testing, intended to shift the costs of their unauthorized testing to Defendants. Moreover, by repeatedly seeking this testing through discovery, and filing repeated motions with the Court, but then disclaiming the necessity of doing so in their Opposition to the sanctions motion, Plaintiffs and their counsel have established that they are willing to unnecessarily multiply these proceedings and take unsupportable positions. In these circumstances, Plaintiffs, and not Defendants, should bear the financial responsibility for their wrongful conduct and overly aggressive litigation strategy.

---

[2]     Although PEER did not directly participate in the unauthorized testing, they did attempt to benefit from it by jointly submitting that evidence to the District, the EPA, and Congressman Lieu. To account for the varying degrees of responsibility between America Unites and PEER, the Court will not order PEER to compensate the District for the physical damage caused by the unauthorized testing. PEER is, however, subject to all of the other sanctions imposed by the Court because of their involvement in the presentation of that evidence and their defense of it in Plaintiffs' Opposition to the sanctions motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-2124 PA (AJWx) | Date | December 21, 2015 |
|---|---|---|---|
| Title | America Unites for Kids, et al. v. Sandra Lyon, et al. | | |

5. The Court orders Plaintiffs, their officers, directors, members, supporters, employees, and anyone acting in concert with them, to cease any efforts to sample or test caulk, other building materials, or any other item or location at the Malibu Campus, except with the express authorization of this Court. Any further unauthorized testing or attempts to submit evidence from any such unauthorized testing to this Court will result in the imposition of additional sanctions that could result in: (1) dismissal of this action with prejudice; (2) an order requiring Plaintiffs to pay all reasonable attorneys' fees and costs incurred by Defendants in this action; (3) criminal contempt proceedings pursuant to 18 U.S.C. §§ 401 & 402; and (4) other appropriate sanctions.

6. Plaintiffs' officers are ordered to file, no later than January 11, 2016, declarations signed under penalty of perjury, that they: (1) understand that the Court has ordered that no further unauthorized testing be performed at the Malibu Campus without express authorization of this Court; (2) that Plaintiffs' officers will comply with the Court's orders; and (3) Plaintiffs and their officers will not participate in unauthorized testing or advocate or suggest that others engage in unauthorized testing.

## Conclusion

For all of the foregoing reasons, Defendants' Motion for Sanctions is granted in part, and denied in part. The Court will not issue terminating sanctions at this time. Instead, the Court imposes the lesser sanctions as detailed in this Order. The Court further orders that, no later than December 28, 2015, all samples gathered during any unauthorized testing be turned over to Defendants' counsel. Defendants' counsel shall maintain custody of the samples pending further order of this Court.

IT IS SO ORDERED.

|  | : | 35 |
|---|---|---|
| | Initials of Preparer | SMO |